William H. STEPNEY, Jr.

v.

Raymond LOPES, Commissioner of Corrections, and Joseph I. Lieberman, Attorney General.

Civ. No. H–84–306 (PCD).

United States District Court, D. Connecticut.

Aug. 28, 1984.

James A. Wade, Sally S. King, Robinson, Robinson & Cole, Hartford, Conn., for plaintiff.

Carl Schuman, Anne Dranginis, Wallingford, Conn., for defendants.

## MEMORANDUM OF DECISION

DORSEY, District Judge.

Petitioner seeks a writ of habeas corpus, 28 U.S.C. § 2254. Jurisdiction is founded on 28 U.S.C. § 2241. Petitioner was charged with murder, Conn.Gen.Stat. § 53a–54a, and was convicted after a jury trial. The factual detail is found in the decision on his appeal which was denied by the Connecticut Supreme Court. *State v. Stepney*, 191 Conn. 233, 464 A.2d 758 (1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1455, 79 L.Ed.2d 772, *reh'g denied,* —— U.S. ——, 104 S.Ct. 2163, 80 L.Ed.2d 547 (1984). He is serving twenty-two years to life, this court having denied a stay of execution pending this petition. *Stepney v. Lopes,* 597 F.Supp. 11 (D.Conn. 1984).

As in his petition for certiorari to the United States Supreme Court, petitioner claims:

1. A violation of petitioner's fifth amendment right not to testify at trial.

2. A violation of petitioner's due process right.

*Fifth Amendment Claim*

Two Connecticut State Police Officers testified to their interview of petitioner.[1] The first, James Cavanaugh, was asked to describe his conversation with petitioner. Petitioner objected on the ground that any statements attributed to him constituted hearsay, since such were not inconsistent with any position petitioner had taken at trial. Counsel conceded that, if Mr. Stepney testified at odds with what Cavanaugh and Daloisio would attribute to him, their version of the conversation would be admissible as prior inconsistent statements. (Tr. 1236). Counsel stated:

> I'm dealing here with a pure evidentiary question and the rules of court and not any constitutional claim.

(Tr. 1237). This objection was argued by the state and overruled by the court as an evidentiary matter. Petitioner's attorney reserved the right to specific objection. (Tr. 1245).

Cavanaugh recited the conversation (Tr. 1246–50) until he was asked and replied:

Q: What did you ask him?

A: I asked him again to recall where the—where he had left the beer can and, again, he said he didn't know and I just said to him, 'What would you say if I told you that there was an eight ounce beer can found next to the victim's body?' and Mr. Stepney said to me, 'Well, after she had finished her drink she wanted a beer, so I went out to my truck and I got her a can of beer,' and I said something to the effect, 'Well that doesn't make sense to me, that what I know about the victim, she was a liquor drinker and seeing as she had a bottle of liquor there, why would she want a beer?' And at that point Mr. Stepney got very mad and very upset and jumped up and said he wanted a lawyer and didn't want to talk to me anymore, and he left the room.

Q: Did he leave the barracks at that time?

A: Yes, he did.

Q: Now, earlier in the evening, did you have an opportunity to observe his demeanor when he was at the Lockwood house, specifically?

A: Yes, I did.

Q: And what did you observe about his—

Mr. Wade: Objection, relevance.

(Tr. 1250–51).

Petitioner claims here that his wish to stop talking and to see a lawyer were exercises of his fifth and sixth amendment rights. He claims that the admission into evidence of his exercise of those rights violated his fifth amendment right because when the evidence was admitted he became obliged to explain his conduct, and was thus forced to testify notwithstanding his fifth amendment right not to do so.

This claim was not raised at trial. On appeal, in compliance with the Connecticut Supreme Court rules,[2] petitioner noted the error he claimed as to the testimony of Cavanaugh and Daloisio:

> Whether the trial court erred in failing to sustain defendant's objections to the testimony of two Connecticut State Police

---

**1.** James Cavanaugh testified first. James Daloisio testified second, prior to which petitioner's attorney objected: "At this point, Your Honor, I would raise the same objection that was previously raised in connection with Trooper Cavanaugh's, same grounds." Without objection, Trooper Daloisio was asked: "Did he at that point say he was leaving?" Answer: "Yes, he did." Question: "And I take it he left?" Answer: "Yes, he did." (Trial Transcript (Tr.) 1631). On cross-examination he was asked if petitioner refused to talk further to the police. (Tr. 1698–99).

**2.** Connecticut Practice Book, § 3060F, reads:

The appellant's brief shall contain ...:
(a) A concise statement setting forth, in separately numbered paragraphs, without detail or discussion, the principal issue or issues involved in the appeal, with appropriate references to the page or pages of the brief where the issue is discussed, pursuant to subsection (c) hereof. The statement ordinarily should not exceed one page in length and should be printed on a page by itself. The court may refuse to receive a brief not complying with this requirement.

Officers as to statements made by the defendant which defendant claimed were inadmissible hearsay.

Brief of Appellant to Connecticut Supreme Court, p. 2. Petitioner's argument of this point, Brief of Appellant, pp. 49–57, deals almost exclusively with the hearsay nature of the evidence and the Connecticut rule in *State v. Villafane*, 171 Conn. 644, 673–74, 372 A.2d 82 (1976), *cert. denied*, 429 U.S. 1106, 97 S.Ct. 1137, 51 L.Ed.2d 558 (1977), *overruled, State v. Stepney*, 191 Conn. 233, 464 A.2d 758 (1983). The only references to a constitutional claim, asserted on appeal for the first time, were:

> ... in questioning Troopers Cavanaugh and Daloisio as to the statements made by Mr. Stepney on the night of May 9, 1979, none of which were written or signed, the state in essence interfered with the defendant's constitutionally protected right to remain silent. Once those statements were introduced, the defendant was more or less forced to take the stand to further explain them.

Brief of Appellant, p. 54.

> In allowing the troopers to testify about the interview at the barracks and especially about its termination, the court enabled the jury to hear the above quoted answer which without more or an explanation by the defendant was particularly damning and infringed on the defendant's right to remain silent.

Brief of Appellant, p. 56.

> To allow that testimony when the court did was in error as a matter of law and highly prejudicial to the defendant's right to remain silent.

Brief of Appellant, p. 57. Petitioner argued that in admitting the testimony *"the trial court* interfered with defendant's right to remain silent."￼ Reply Brief, p. 14 (emphasis added).

The state, in response to petitioner's claims, argued:

A. The matter had not been raised at trial.

B. The matter was not properly raised in petitioner's appeal, contrary to the Practice Book, § 3060F(c)(3).

Thus the procedural question at both trial and appellate levels was placed before the Connecticut Supreme Court, which held the statements to be admissions and admissible as a matter of Connecticut evidentiary law. The court did not speak to any constitutional question except to note "[t]he privilege against self-incrimination extends only to statements which are compelled by the government. It does not protect against disclosure of statements voluntarily made to agents of the government or of statements made to third parties." *Stepney*, 191 Conn. at 254, 464 A.2d 758, citing *State v. Barlow*, 177 Conn. 391, 395, 418 A.2d 46 (1979) and *State v. Zeko*, 176 Conn. 421, 425, 407 A.2d 1022 (1979). Both *Barlow* and *Zeko* held statements found to be voluntary were admissible. Thus, the Connecticut Supreme Court did not decide the precise point that petitioner now raises and did not indicate that its silence was or was not based on procedural considerations.

Petitioner's application for certiorari was denied by the United States Supreme Court. The present petition was then brought on the same grounds on which the petition for certiorari was based.

The first question is whether petitioner is barred here by reason of his failure to raise the issue in the trial court and on appeal. If it was raised on appeal, was it done properly and adequately? Petitioner not only failed to state a constitutional ground for his original objection, but also did not do so at several subsequent occasions in the course of the trial when it was feasible for him to have done so. Petitioner does not argue that a constitutional right attached to the statements or conduct at their occurrence, even though he characterizes them as assertions of his fifth and sixth amendment rights. Rather, he argues that the violation of a fifth amendment right occurred when the court admitted the evidence. Petitioner did not, thereafter, raise his present constitutional objection either before the evidence was actually heard, after it was heard (when a motion to strike might have been made), prior to the testimony of the second police officer, nor in a motion for a new trial (none such is reflected in the record).

The prosecutor did not ask Cavanaugh a direct question which specifically elicited the testimony concerning petitioner's election to stop answering questions and his intent to contact an attorney. That testimony came in the course of Cavanaugh's running description of petitioner's conversation. When it was spoken by Cavanaugh, no objection or motion to strike was made by petitioner. Cavanaugh later testified to petitioner's termination of the interview, without objection or a motion to strike. Tr. 1293, 1297, 1309 (Cross-examination), 1314. When Daloisio testified thereafter, clearly for the purpose of describing Cavanaugh's interview of the petitioner, petitioner made only the same hearsay objection. In addition, when a specific question as to the termination of the interview was put to Daloisio, there was no objection by which the repetition of the description, of which petitioner here complains, could have been avoided. (Tr. 1630–31).

Petitioner does not discuss the absence of any constitutional objection before the trial court. He does claim to have raised the issue on appeal, but does not address the failure of the Connecticut Supreme Court to speak to the issue and whether it is thus to have been deemed to be disposed of on procedural grounds. It is not without significance that the evidence from Cavanaugh, though it came in direct examination, was not specifically elicited by a question asked by the prosecutor but was part of a running commentary, and no reference was thereafter made to it. *See United States v. Williams,* 556 F.2d 65, 67 (D.C. Cir.), *cert. denied,* 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1070 (1977).

The question then is the propriety of granting petitioner habeas corpus relief on a ground not raised at trial, sketchily, if at all, raised on appeal, and not decided on appeal. The linchpin of the interrelationship of this petition to the state court proceedings is found in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594, *reh'g denied,* 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 163 (1977). Whether it be comity, judicial efficiency, or deference to a state court's initial right to determine a federal law issue, a balance is required between the protection of an accused's rights and the need for finality of any litigation, particularly when the protraction occurs in the federal court with respect to litigation originally tried in a state court. Not only does the state have an interest in the integrity of its appellate process, as well as the finality thereof, as against circumvention in the federal courts, the federal courts are obliged to recognize that interest. *Forman v. Smith,* 633 F.2d 634, 639–40 (2d Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1710, 68 L.Ed.2d 204 (1981); *Reed v. Ross,* —— U.S. ——, ——, 104 S.Ct. 2901, 2907, 82 L.Ed.2d 1 (1984). It can be argued that the preservation of our system, founded on the rights of individuals, requires deference of all other considerations to the question of whether a petitioner's rights have been denied. Yet, no system can operate on absolutes. The rights of any individual inevitably conflict with the rights of others or the rights/interests of the community which embody the cumulative rights or interests of its citizens. Thus, it has been held that if a right existed, such as petitioner claims, to be tried without being forced to testify, then an accused must afford the state court an opportunity to decide the question. *Wainwright* thoroughly analyzes the rationale for the rule which bars federal courts' consideration of a constitutional ground for habeas corpus (to which the district court is limited by 28 U.S.C. § 2254) related to admission of evidence at trial where petitioner failed "to timely object to said admission" in accordance with the state's procedural rules. *Wainwright,* 433 U.S. at 87, 97 S.Ct. at 2506. Here Connecticut's Practice Book required an objection and an exception to preserve a ground for appeal.[3]

**3.** Practice Book § 288, Objections to Evidence: Whenever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he desires it to go upon the record, before any discussion or argument is had.... An exception to the ruling must be taken in order to make it a ground of appeal.

Petitioner did neither. Further, Connecticut's Practice Book requires:

(a) A statement of each issue involved in an appeal. Practice Book § 3060F(a). *See* n. 2.

(b) In the brief, the question, the objection, the ground on which it was based, the answer, the ruling and any exception. Practice Book § 3060F(c)(3).[4]

■ The absence of a reference to the claim in the opinion of the Connecticut Supreme Court leaves it uncertain as to whether the Supreme Court even considered the issue. As there is no clear resolution of the federal law claim by the Connecticut Supreme Court, the rule of *Brown v. Allen,* 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), that the district court, on a petition for habeas corpus, makes an independent judgment on the merits of the federal claim without being bound by the determination made by the state courts, is not applicable. In Connecticut, a claim will not be considered on appeal as to an evidentiary ruling at trial without a proper objection and exception. *State v. Braman,* 191 Conn. 670, 684, 469 A.2d 760 (1983). An exception is found in *State v. Evans,* 165 Conn. 61, 327 A.2d 576 (1973), where a fundamental right has been lost and no fair trial could have occurred. This court is barred from issuing a writ on the basis of a claim not raised in the state appellate court, because of the requirement that state remedies be exhausted. *See Paul v. Henderson,* 698 F.2d 589 (2d Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 120, 78 L.Ed.2d 118 (1983). If the matter were inadequately or improperly raised in violation of the rules of the state court, *Phillips v. Smith,* 717 F.2d 44 (2d Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1287, 79 L.Ed.2d 689 (1984); *United States ex rel. Spurlark v. Wolff,* 699 F.2d 354 (7th Cir. 1983), or if there were a procedural basis for the failure to decide the question, albeit a procedural denial was not specifically articulated by the state appellate court, this court would be barred from an independent consideration of the question except under the *Wainwright* test. *Martinez v. Harris,* 675 F.2d 51 (2d Cir.), *cert. denied,* 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97, *reh'g denied,* 459 U.S. 1024, 103 S.Ct. 392, 74 L.Ed.2d 521 (1982); *Johnson v. Harris,* 682 F.2d 49 (2d Cir.), *cert. denied,* 459 U.S. 1041, 103 S.Ct. 457, 74 L.Ed.2d 609 (1982); *Edwards v. Jones,* 720 F.2d 751 (2d Cir. 1983); *Preston v. Maggio,* 705 F.2d 113 (5th Cir.1983); *Lewis v. Cardwell,* 609 F.2d 926 (9th Cir.1979).

■ Petitioner did not raise the issues presented here at trial and on appeal did not clearly nor properly raise the matter. The procedural deficiency was raised by the state in the appeal. As the claim was not raised at trial and was at best not clearly raised on appeal, the existence of procedural grounds for the Connecticut Supreme Court to have refused to consider the issue, albeit such a basis for the refusal is not articulated, warrants the refusal of this court to grant habeas corpus, unless cause for the failure to raise the issue and prejudice are shown. *Wainwright,* 433 U.S. at 87, 97 S.Ct. at 2506; *Martinez,* 675 F.2d at 54.

■ Petitioner has shown no valid cause for not having raised the issue either at trial or as required before the Connecticut Supreme Court. He concedes the failure to raise it at trial. (Tr. 1237). Nowhere does it appear that he contends otherwise. As-

---

4. Section 3060F(c) provides:

(3) When error is claimed in any other ruling in a court or jury case, the brief shall include, where appropriate: ... the question ...; the objection and the ground on which it was based; ... the answer, if any; the ruling; and any exception. When the basis of the ruling cannot be understood without a knowledge of the evidence or proceeding which preceded or followed the ruling, a brief narrative or verbatim statement of the evidence or proceeding should be made. A verbatim excerpt from the transcript should not be used if a narrative statement will suffice. When the same ruling is repeated, the brief should contain only a single ruling unless the other rulings are further illustrative of the rule which determined the action of the trial court or establish the materiality or harmfulness of the error claimed. The statement of rulings in the brief shall include appropriate references to the page or pages of the transcript.

suming that he did not raise the issue, this court's review of the record does not reflect the cause required by *Wainwright.* No circumstances excusing the failure are cited nor found. *Reed v. Ross,* —— U.S. ——, ——, 104 S.Ct. 2901, 2906, 82 L.Ed.2d 1.

Even if cause were shown, there is no evidence of prejudice as required. *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976). Petitioner's contention that he did not have nor make a constitutional objection until the judge ruled against him is unfounded on two grounds. The fact that a ruling prompts one to have a greater need, as he sees it, and thus be forced to testify, resulting in a lesser freedom to exercise his right to remain silent is a bootstrap argument. It assumes and relies on its own conclusion. Any evidentiary ruling may increase a defendant's risk of conviction. It is not the effect of the ruling from which a constitutional right arises. The nature of the evidence and the circumstances in which it came to the attention or possession of the government creates a constitutional right, if any. Thus petitioner cannot excuse, nor claim cause in, his failure to raise his fifth amendment claim. This is particularly true since he had at least three opportunities to rectify the situation—one before the damage (as the petitioner sees it) was done, i.e. after the ruling but before the jury heard the testimony. Whether the claim was an afterthought or was not made inadvertently or intentionally is not controlling. Under *Wainwright,* absent a showing of cause, petitioner may not protract adjudication of his dispute with the state by submitting it to the federal courts piecemeal. *Johnson v. Harris,* 682 F.2d at 51.

Petitioner claims that he was forced to testify to explain his statements and conduct. Petitioner's testimony on direct does not reflect a purpose of explaining the testimony here complained of. Mr. Stepney's direct testimony covers approximately 121 transcript pages. He testified on a wide-range of subjects and his activities, positively asserting his defense. The "explanation" of the scenario which was described by the state troopers, the root of his claim here, consists of six questions and the answers thereto, only three pairs of which arguably related to his terminating the interview with the state police.[5] With respect to petitioner's refusal to answer further questions, and his stated intention to see a lawyer, the record reflects:

1. The question which prompted his reaction "didn't have anything to do with this" (referring to the murder case), it related to a "family problem."

2. He was frustrated by the question which he claims was asked.

Thus petitioner's direct testimony was a denial of the police version. It was not an explanation. Petitioner cannot contend that the court's decision to admit the evidence forced him to explain the policemen's testimony when he clearly took the stand to present his own case and defense and to refute and deny the evidence against him. He did not use the occasion, even to a minor degree, to explain what the police attributed to him. *See* petitioner's analysis of his testimony, petitioner's brief herein pp. 12–14. Thus under the second prong of the *Wainwright v. Sykes* test there was no prejudice. Conduct which prompts a defendant to testify does not violate his right not to testify. *McGautha v. California,* 402 U.S. 183, 213, 91 S.Ct. 1454, 1470, 28 L.Ed.2d 711 (1971). As the record does not support his claim that he testified because he was forced to do so to explain his conduct and statements as described by the

---

5. Q: What did he question you about when he came back in?
   A: He asked me about an incident that happened back in 1976, and I got—I stopped, and I told him that I didn't think it was any of his business, that it didn't have anything to do with this.
   Q: What was that incident, about a family problem?

A: About a family problem.
Q: And when you said to him, 'What does that have to do with this,' what was your attitude toward him?
A: I just got up and said I wanted to see my wife and my lawyer.
(Tr. 1967).

police, he is deemed to have freely elected to testify. In such an instance, the evidence objected to could have been admitted anyway. *United States v. Caro,* 637 F.2d 869, 876 (2d Cir.1981).

■ Petitioner's argument, if valid, would apply equally to any situation in which probative evidence was admitted against a defendant. The claim here is not that the evidence of his termination of the interview penalized him for asserting his fifth and sixth amendment rights. What the petitioner claims here is that the admission of the evidence was damaging to his case unless he explained it and thereby compromised his free exercise of his right to remain silent *at trial.* Any evidence which is probative on the issue of guilt, that is if it incriminates the defendant, could be claimed to result in less than a free choice of whether to testify or not and could this give rise to the same fifth amendment claim asserted here. It is true that only by an opportunity for fair exercise of the right not to testify is the right meaningfully accorded to a defendant. *Doyle v. Ohio,* 426 U.S. 610, 618, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976). However, all probative evidence, not subject to other constitutional or evidentiary exclusion, may be admitted against a defendant in a criminal case without violating his fifth amendment right even if the evidence increases the risk of conviction if he or she does not testify in response. The government has the right, indeed the obligation, to present all the evidence against defendant and does not thereby improperly oblige nor force a defendant to testify in derogation of his fifth amendment right. None of the prohibitions against emasculation of the right not to testify reaches so far as petitioner claims. If petitioner were correct, no prosecution presentation would be permissible as constituting pressure upon a defendant to testify in response. That is neither the explicit nor implicit limitation of *Doyle; Griffin v. California,* 380 U.S. 609, 614, 85 S.Ct. 1229, 1232, 14 L.Ed.2d 106, *reh'g denied,* 381 U.S. 957, 85 S.Ct. 1797, 14 L.Ed.2d 730 (1965); *Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980); *Anderson v. Charles,* 447 U.S. 404,

100 S.Ct. 2180, 65 L.Ed.2d 222, *reh'g denied,* 448 U.S. 912, 101 S.Ct. 27, 65 L.Ed.2d 1173 (1980); nor *Simmons v. United States,* 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968).

If petitioner's right to stop the questioning and seek counsel could meaningfully and freely be asserted only if the fact of that assertion could not be put before the jury, his right to have such evidence excluded existed from the time he stopped the questioning. Yet petitioner put to neither the trial court nor the Connecticut Supreme Court no such proposition. Indeed even here he concedes, as he argued on appeal, but not to the trial court, he did not "assert a constitutional prohibition against the admission of those statements." Whether he had the right to exclude the description of his termination of the questioning and his statement of his intention to seek a lawyer is thus not before this court. Having thus previously failed to raise the claim, a bar to his doing so now, petitioner seeks to found essentially the same claim upon the occasion of the judge's ruling (which as we have seen was not called upon to deal specifically with the question raised here). Petitioner seeks to obtain a separate fifth amendment right at trial by transference from whatever right might have accrued with his terminating the questioning and claiming his right to counsel. Having failed to do so at trial, petitioner cannot slightly change the claim by focusing not on a right to exclude the evidence, but on the claimed effect of the ruling, for the purpose of seeking the presently requested relief.

Petitioner suggests that a different result would have occurred had he been warned as required by *Miranda.* Without agreeing with petitioner's suggestion of inconsistency, it should be noted that the Supreme Court barred the reference to silence which followed *Miranda* warnings not on the basis of the fifth amendment nor with reference to preserving a meaningful choice of silence, but on the basis of the unfairness resulting from inducing the petitioner's silence by the warnings and then using the silence to a defendant's detri-

ment. *Fletcher v. Weir,* 455 U.S. 603, 606, 102 S.Ct. 1309, 1311, 71 L.Ed.2d 490 (1982); *Jenkins v. Anderson,* 447 U.S. at 239, 100 S.Ct. at 2129; *United States v. Caro,* 637 F.2d at 874. If petitioner was penalized, contrary to *Minnesota v. Murphy,* —— U.S. ——, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), by the jury hearing that he claimed his fifth and sixth amendment rights at the termination of the police interview, it was not because the trial judge so ruled. If the petitioner was penalized for exercising his constitutional rights in the sense of sustaining an adverse effect at trial from the admission of evidence of that exercise, the "penalty" resulted from his failure to base his objection on the constitutional ground. He cannot fault the trial judge for a result he created by failing to raise the constitutional objection. Neither can he convert the judge's ruling to a violation of his constitutional rights at trial by looking only at the impact on the petitioner's decision whether to testify when the evidence, absent other objection, was held properly admissible under the state's evidentiary law, a matter which this court may not now review. 28 U.S.C. § 2254.

Neither may petitioner invoke *United States v. Doe,* —— U.S. ——, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), as there the fifth amendment objection was made at the outset and was thus squarely before the trial court. Rights may indeed be waived in exchange for benefits from the exercise of other rights without necessarily constituting compulsion for the purpose of the fifth amendment. *McGautha v. California,* 402 U.S. at 212–13, 91 S.Ct. at 1469–70.

■ Petitioner's claim cannot be granted on the basis that by admitting the evidence over a hearsay objection the petitioner's right to silence at trial was thus violated. The mere force of evidence is not compulsion of the sort forbidden by the fifth amendment privilege.

*The Charge*

■ Petitioner asserts constitutional error in the "focus" of the charge on the credibility of petitioner's wife and himself, individually and cumulatively. Petitioner does not otherwise contest the court's instructions on credibility. Indeed, the charge clearly and emphatically instructed the jury that it was their duty alone to decide the weight to be given to the testimony of each witness and to judge their credibility. The trial judge properly and fairly put to the jury the appropriate considerations for determining credibility and the weight they decided to give to testimony.

A. *Focus on Mrs. Stepney*

Petitioner points to a two-sentence comment on the testimony of Mrs. Stepney and contends that by "focusing" on her credibility the trial court essentially led the jury to discredit her. Obviously, Mrs. Stepney was a key factor to the defense. She offered evidence that would suggest that Mr. Stepney's itinerary on the day of the murder was not coincidental with the time of the victim's death at her residence. It is, of course, a defiance of reasoning to suggest that the potential for a shading of her testimony to benefit the petitioner did not exist. Petitioner does not question the propriety of the jury's consideration of that factor, but does challenge the propriety of the court's mention of the permissible consideration by the jury of possibly inconsistent testimony by Mrs. Stepney as contrasted to earlier statements made by her. For the following reasons, the court's comment cannot be said to have been improper by constitutional standards:

(1) There was no positive direction to the comment.

(2) The comment did not improperly or inaccurately mischaracterize Mrs. Stepney's testimony.

(3) By its content, and in its context, the comment did not preempt the jury's function.

The comment was passive. Thus the court used the phrase "I think there was evidence" of inconsistency. It illustrated the permissible evaluation of testimony by use of Mrs. Stepney as an example as a witness who had been impeached by prior inconsistent statements. The jury was told it "may believe [prior statements] to have

been inconsistent with her testimony." None of that language is directional in nature. Clearly it was illustrative and passive. It in no way either directed nor intimated that the jury should find inconsistency nor what it should do if inconsistency was determined.

A review of the trial transcript of Mrs. Stepney's testimony does suggest aspects in which her testimony was at odds with statements made by her at other times. Impeachment of her credibility was thereby part of the presentation to the jury. As the trial court merely pointed out that the jury might find inconsistency, it clearly left the determination, not only of the existence of any inconsistency, but the significance of any inconsistency to the jury.

Close review of the words used, their context, and the entirety of the charge (*see Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)) clearly demonstrate that the court did not take from the jury its independent right to decide the question of credibility. The trial court not only left to the jury the decision, but instructed the jury that it was their decision. Immediately prior to the portion of the charge petitioner challenges as well as immediately thereafter, the court reiterated the right of the jury to determine credibility. Thus, the comment on Mrs. Stepney's testimony, which the jury might have found inconsistent, cannot be regarded as of such import as to have denied the petitioner his right to a jury trial. Contrary to the petitioner's claim, the court's comment, which of course did direct the jury's attention to Mrs. Stepney's testimony, did not overly emphasize, single out, or unduly or improperly characterize her testimony. The comment did not preempt the jury's function so as to deny the petitioner's constitutional right to a fair trial by a jury. Taken in the context of the charge as a whole, the jury was clearly not bound by the court's comment on the evidence nor was any comment to be taken as emphasizing any particular testimony.

It is not clear that the Connecticut Supreme Court decided petitioner's objection to the trial court's comment on a constitutional basis, as it found that "defendant never makes clear the grounds, constitutional or otherwise, upon which error should be found." *State v. Stepney*, 191 Conn. at 247, 464 A.2d 758. The decision does not speak in terms of petitioner's constitutional rights, but it is assumed, for the purpose of this proceeding, that the constitutional issue was decided. This court then is to make an independent evaluation of the constitutional claim as per *Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1952).

The court is not insensitive to the potential ramifications of a trial judge's conduct in the course of the trial. At most, from petitioner's view, a conscientious trial judge made an illustrative comment as to a possible application of a principle that the jury might appropriately have applied in their deliberations. Jurors' reactions to the actions or statements of judges may range from total acceptance as controlling to total disregard. In retrospect one can never be absolutely sure what effect a particular remark, by a particular judge, in given circumstances, had on the jurors in question. In reviewing petitioner's claims, the review should apply reason and logic based on all of what the trial judge said. In view of what the petitioner has at stake, the burden of the state to prove the charges, the probability of some deference by most jurors to what a presiding judge says, and the obligation of the court to provide a fair trial, petitioner is entitled to a careful review of what a trial judge says in a charge, particularly in commentary on the evidence. However, the standard of review does not require, nor permit, isolated analysis of minor segments in disregard of the charge as a whole. Petitioner is entitled, here, to a review of whether the comments violated his federal constitutional rights to a trial by a jury which must be permitted to exercise the independent judgment of its members, objectively and fairly. The verdict must be that of a jury which arrives upon its decision by its own choice, not by the preemption, direction, intrusion, undue influence, or dictation, of the trial judge.

Judge Stoughton's charge covered 43 pages of transcript. He dealt with the

question of the state's burden of proof, the petitioner's presumption of innocence, the quality of the evidence, the jury's role as the triers of the facts, and the jury's right to determine the credibility and weight of the testimony and evidence. The charge was consistently worded in terms of the jury's decisions. Specifically and emphatically, he told the jury of their role as judges of the facts on no less than thirteen occasions. Further, they were told twice that the judge's comments were not intended to place any emphasis on or to stress anyone's testimony. On three occasions the jury was told that the judge's comments on the evidence were not binding on them, could be disregarded, and should be disregarded if inconsistent with the recollection of the jury. Defendant's only exception to the charge was that the comments on Mr. Stepney's credibility and Mrs. Stepney's inconsistency constituted an unfair focus on their testimony.

While the comment about Mrs. Stepney's testimony cannot be said, with absolute certainty, to have had no influence on the jury's consideration of what she said, to find that the jury's independence was reasonably likely to have been emasculated strains reason and logic. The jury's deliberations were protracted. They had two and one-half hours of testimony reread. Thus, not only from the content of the comment on Mrs. Stepney's testimony, but also considering the context in which it was given, the charge in its entirety as well as the lack of any suggestion that the comment resulted in any diminution of the independence of the jury's deliberations, it cannot be said that Judge Stoughton invaded the province of the jury or in anyway precluded the jury from an independent, fair assessment of the weight and credibility of Mrs. Stepney's testimony. Petitioner has not demonstrated that his federal constitutional right to a fair trial was denied. Comments which single out a crucial witness to illustrate a possible factor bearing on the issue of credibility can, of course, be criticized on the basis of a possible effect on the jury's thinking. Such comments are perhaps best not made to avoid any suspicion as to their effect. The comment here, however, has not been demonstrated to have preempted nor to have been likely to have had any significant impact on the jury's deliberations so as to deprive petitioner of his constitutional rights. On this ground, his petition may not be granted.

### B. *Focus on Petitioner*

The comment on petitioner was pointed toward insuring that he receive neither more nor less consideration from the jury than any other witness and to emphasize his right to the same consideration. *See Wilson v. United States*, 162 U.S. 613, 621, 16 S.Ct. 895, 899, 40 L.Ed. 1090 (1896). The court required that the jury apply the same factors as they would any other witness to decide the credibility of his testimony "including his interest in the verdict." That constituted a passive comment, a permissible consideration for the jury to decide. The court did not reflect any opinion on its part as to what the determination should be. For the same reasons as discussed above in relation to the comment on Mrs. Stepney's testimony, petitioner has not demonstrated that his constitutional rights were denied. Whether the comment was proper, as determined, by the Connecticut Supreme Court, *State v. Stepney*, 191 Conn. at 249 n. 9, 464 A.2d 758, to be in accordance with Connecticut's well-settled rules, it may still be considered here as to its compliance with the federal constitutional requirements of trial by jury.

An interest in the outcome of a case clearly provides the potential motivation for one who testifies to his advantage, a factor a jury is permitted to consider. *Reagan v. United States*, 157 U.S. 301, 304, 310, 15 S.Ct. 610, 611, 613, 39 L.Ed. 709 (1895). The attempt to advantage one's self in testimony may be conscious or unconscious, gross or slight. It may be sheer fabrication and falsehood or slight shadings from the truth. Whether a criminal defendant's interest has affected his or her testimony is for a jury to decide. Petitioner does not, and did not in his state appeal, otherwise claim impropriety in the overall fairness of the charge. If the jury deter-

mined to discount, or discredit entirely, the petitioner's testimony, he cannot complain. The trial court's instruction, which merely called the jury's attention to that interest as a possible consideration did not introduce an improper element for their consideration.

Given all the factors required to insure petitioner's right to a fair trial, the six words of Judge Stoughton pertaining to petitioner's interest in the verdict as a factor the jury were permitted to consider in assessing his testimony, petitioner has not demonstrated that the charge could realistically have invaded the jury's province. The very limited comment made, the context in which it was given, the lack of any forceful direction in its connotation, the clear reservation of the right of the jury to make all determinations of fact, to take the judge's comments as merely illustrative and not as intended to emphasize any evidence, and to disregard the comments of the judge where the jury's determination of facts might have differed from what the judge may have said, create a total picture of a proper presentation to the jury for its independent determination. The charge did not direct the jury's finding. It did not express the trial judge's view on the matter. It clearly left to the jury the independent determination of the facts and thus cannot be said to have denied the petitioner's constitutional right to a jury trial.

Accordingly, petitioner's claim to a writ of habeas corpus cannot be sustained on the basis of the six words, which permitted the jury to consider the petitioner's interest in the verdict in determining the weight and credibility of his testimony.

C. *Focus on Petitioner and His Wife— Cumulatively*

This is an argument that two fractions when added constitute more than their numerical total. *See Marcus v. United States,* 422 F.2d 752 (5th Cir.1970). For all the reasons discussed above, a careful analysis of the charge in its entirety and in regard to those portions which pertain to petitioner or his wife, taken separately or cumulatively, it cannot be said that petitioner has demonstrated that his federal constitutional right to a jury trial and the independent determination of the facts by the jury was denied. *See Maselli v. Manson,* 517 F.Supp. 1183 (D.Conn.), *aff'd,* 681 F.2d 802 (2d Cir.1981).

Accordingly, the petition for a writ of habeas corpus is denied.

SO ORDERED.