[No. 14274-7-I.   Division One.   May 1, 1985.]

THE STATE OF WASHINGTON, *Respondent*, v. DARREN RAY CARLIN, *Appellant*.

*Raymond H. Thoenig* and *Dori Jones* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Marion J. Mittet, Deputy,* for respondent.

SWANSON, J.—Darren Ray Carlin, a juvenile, appeals the dispositional order finding him guilty of second degree burglary, alleging that a witness improperly gave an opinion as to the defendant's guilt that invaded the province of the trier of fact.

At about 1 a.m. on July 26, 1983, Officer Dennis Bronson saw three white male juveniles walking toward the boxcars at K & L Beverage Company in King County. He observed them removing beer from a boxcar and on his car radio called for assistance. When he identified himself as a police officer and ordered them to halt, two of the youths ran off.

Officer Bruce Vestal, who responded to Officer Bronson's call for assistance, saw two youths about 300 yards from the railroad cars peering around a building toward K & L Beverage Company. When he yelled at them to stop and identified himself as a police officer, they ran away. Officer

Vestal pursued and subsequently arrested one of the two, identified as the defendant, who had hidden in some bushes. After Carlin was arrested, the police dog arrived and stood next to the officer and the defendant.

Officer Terry Jarboe, who responded to Officer Bronson's call for assistance with his police dog, saw three people on the railroad tracks start to run when Officer Bronson yelled at them to stop. Upon command, the dog tracked southwest to a place where several cases of beer were found and then toward some office buildings. The dog ran around the corner of a building, and when Officer Jarboe followed him, he saw the dog standing beside Officer Vestal and the defendant. At trial Officer Jarboe testified that experienced police dogs like his dog tracked by following a guilt or fear scent and that his dog tracked the defendant in this case by following a "fresh guilt scent." The defendant was tried before Commissioner Maurice Epstein, found guilty of second degree burglary, and sentenced by Commissioner Stephen Gaddis to 30 days' confinement.

The issue is whether the police officer's testimony that his police dog located the defendant by tracking a "fresh guilt scent" was an opinion as to guilt whose admission violated the defendant's right to a trial by an impartial fact finder. The issue may be raised for the first time on appeal since it involves a constitutional claim. RAP 2.5(a)(3); *State v. Dictado,* 102 Wn.2d 277, 287, 687 P.2d 172 (1984).

The first question is whether the guilt scent testimony's admission was error. Although the general rule is that witnesses are to state facts, not inferences or opinions, *State v. Haga,* 8 Wn. App. 481, 491, 507 P.2d 159, *review denied,* 82 Wn.2d 1006 (1973), opinion testimony by lay and expert witnesses is permissible in certain cases, ER 701 and 702.[1]

---

[1]ER 701 states:

**'OPINION TESTIMONY BY LAY WITNESSES**

"If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue."

Moreover,

> Testimony in the form of an opinion or inferences otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

ER 704.

However, "[t]estimony, lay or expert, is objectionable if it expresses an opinion on a matter of law or . . . 'merely tells the jury what result to reach.'" 5A K. Tegland, Wash. Prac., *Evidence* § 309, at 84 (2d ed. 1982); *see Ball v. Smith*, 87 Wn.2d 717, 722–23, 556 P.2d 936 (1976); Comment, ER 704. "Personal opinions on the guilt . . . of a party are obvious examples" of such improper opinions. 5A K. Tegland § 298, at 58. An opinion as to the defendant's guilt is an improper lay or expert opinion because the determination of the defendant's guilt or innocence is solely a question for the trier of fact. *State v. Garrison*, 71 Wn.2d 312, 315, 427 P.2d 1012 (1967); *State v. Oughton*, 26 Wn. App. 74, 77, 612 P.2d 812, *review denied*, 94 Wn.2d 1005 (1980).

The expression of an opinion as to a criminal defendant's guilt violates his constitutional right to a jury trial, including the independent determination of the facts by the jury. *See Stepney v. Lopes*, 592 F. Supp. 1538, 1547–49 (D. Conn. 1984). The federal and state constitutions' guaranties to a criminal defendant of a trial before an impartial jury apply to a trial before a judge. *State ex rel. McFerran v. Justice Court*, 32 Wn.2d 544, 549, 202 P.2d 927 (1949), *cited in Brister v. Council of City of Tacoma*, 27 Wn. App. 474, 486, 619 P.2d 982 (1980), *review denied*, 95 Wn.2d 1006 (1981). Thus in a nonjury trial a witness' opinion as to the defendant's guilt violates the defendant's jury trial

---

ER 702 provides:

**"TESTIMONY BY EXPERTS**

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

right by invading the province of the impartial fact finder. *See State v. Garrison, supra; State ex rel. McFerran, supra; Stepney v. Lopes, supra.*

Here the defendant contends that the police officer's testimony that the police dog tracked the defendant by following a guilt scent violated his constitutional right by intruding upon the fact finder's function. At trial Officer Terry Jarboe responded to the prosecutor's questions as follows:

Q  Are you familiar with the term, "guilt or fear scent?"

A  Yes, I am.

Q  What does that mean?

A  We found that in experienced police dogs, there is what is called a class [odor]. Dogs are able to distinguish what a person does, whether he's a butcher, baker, candlestick maker, or whatever, by virtue of a class odor. This is imprinted over and above the very individual character smell of one person. We have found that police dogs tend to recognize that a person, after they have been on a street for awhile, is emitting an odor that is very characteristic to the dogs. We call it a class odor of fear, guilt, the prey type of odor. This is . . . a police dog that's had experience and has actually caught criminals. That you can take him to the front door of a Denny's Restaurant type of thing where people have been in and out, and the dog can select out to track a criminal from that particular area because this person is producing a class odor that the dog recognizes and has been praised when he finds it.

A  Do you know whether or not Kai [the police dog] is able to detect a guilt scent?

A  Yes, he is.

Q  How do you read Kai when he's detecting a guilt or fear scent?

A  The dog becomes very agitated. By reading what I'm talking about is that dogs communicate through body language. . . . Kai, in particular, when I—my reading of him, when he picks up fear or guilt scent, is that his ears move up, come very close together and move forward, which in a dog shows that he's starting to become very aggressive and dominant. . . . His tail curls up into a very tight curl. His entire body posture

becomes very much dominant. He knows what he's doing, and he's in pursuit of his game.

Officer Jarboe's testimony continued:

Q Do you have an opinion as to whether the track that was followed this occasion resulted from a fresh scent?
A Yes.
Q Stale scent or guilt scent?
A From a fresh guilt scent.
Q Do you have an opinion as to the relationship of the person that the dog stopped at and the track?
A Yes, I do.
Q What is that?
A The person Officer Vestal had was one of the individuals that had run away from him on the railroad tracks.

Officer Jarboe's testimony that the police dog tracked the defendant by following a fresh guilt scent arguably was an improper opinion as to the defendant's guilt. Particularly where such an opinion is expressed by a government official, such as a sheriff or a police officer, the opinion may influence the fact finder and thereby deny the defendant of a fair and impartial trial. *See State v. Haga, supra* at 492. However, even if the testimony's admission was error, the error was harmless beyond a reasonable doubt. *State v. Harris,* 102 Wn.2d 148, 157, 685 P.2d 584 (1984).

█ The Washington Supreme Court has applied two different tests to determine whether error is harmless beyond a reasonable doubt. Under the "contribution" test, the question is whether the tainted evidence contributed to the finding of guilt. Under the "overwhelming evidence" test, the question is whether the untainted evidence is so overwhelming that it leads necessarily to a finding of guilt. *Harris,* at 157–58; *State v. Jones,* 101 Wn.2d 113, 125, 677 P.2d 131 (1984). Under either test, the admission of the guilt scent testimony was harmless error.

First, the record is convincing beyond a reasonable doubt that the guilt scent testimony did not contribute to the conviction in this case. The court commissioner stated in his oral opinion that the testimony that the police dog

tracked the defendant must be given "some weight" because "obviously a lot of other evidence . . . corroborate[d] that [evidence] . . ." However, the commissioner made no reference to the testimony that the dog tracked the defendant by following a *guilt* scent. Moreover, in a bench trial a trial judge is presumed to have considered only the evidence properly before the court. *In re Wilson,* 91 Wn.2d 487, 490, 588 P.2d 1161 (1979); *State v. Carlson,* 27 Wn. App. 387, 390, 618 P.2d 531 (1980), *review denied,* 95 Wn.2d 1001 (1981). Here the court commissioner mentioned "scent" several times, but never prefaced by the word "guilt." This language in the oral opinion reflects an awareness of the impropriety of considering the testimony as to "guilt" scent in determining the defendant's guilt or innocence. *State v. Carlson, supra.*

Further, the error was harmless beyond a reasonable doubt under the "overwhelming evidence" test, which considers only the untainted evidence. Officer Bronson testified that he saw three juveniles taking beer from a railroad car at K & L Beverage Company. When he ordered them to halt, two ran off. Officer Vestal, who responded to Officer Bronson's call for assistance, testified that he saw two youths peering around a building toward K & L Beverage Company. When he yelled at them to stop, the two ran away. The officer pursued and arrested one of them, the defendant. Thus the defendant was handcuffed and under arrest even before he was tracked by the police dog.

The court's oral opinion acknowledges that the defendant was under arrest before the dog tracked him:

> Now, Officer Vestal was later on the scene . . . First he saw two subjects peering around the building. They started to run and he chased them. One hid, and he eventually flushed that person out. That person was defendant Carlin. He did that. There was no dog. He did it himself.

The oral opinion continues:

> The dog followed the scent [that] led to Mr. Carlin. . . . [H]e tried scenting the other person (the third person)

and it did not work, so it is not perfect. A question may be raised of it being perfect even finding Mr. Carlin. Well, he didn't find him. He was already in custody when he was found, but the dog did go down the track, down through the route, directly to Mr. Carlin.

Additional untainted evidence supporting the defendant's conviction was Officer Bronson's testimony that at the police station he heard the defendant tell his mother that he and two other persons had taken some beer from the boxcars at K & L Beverage Company. Thus if the admission of the guilt scent testimony was error, it was harmless beyond a reasonable doubt under either the "contribution" or "overwhelming evidence" test.

The trial court's judgment is affirmed.

RINGOLD and COLEMAN, JJ., concur.