FILED
COURT OF APPEALS
DIVISION II

2013 MAY 14 AM 8: 59

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42149-6-II |
| Respondent, | |
| v. | |
| CHRISTOPER JOHN DUNNE, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, A.C.J. — Christopher John Dunne appeals his assault and rape jury convictions. Dunne argues (1) the trial court erred by denying his motion to continue the trial; (2) the trial court erroneously denied him the opportunity to cross-examine an emergency room doctor; (3) the prosecutor committed misconduct in closing; and (4) the trial court improperly referred to "victim" in its jury instructions and special verdict forms. We affirm Dunne's convictions holding that (1) the trial court properly exercised its discretion when it denied the trial continuance and excluded speculative testimony, and (2) Dunne failed to preserve for review the remaining allegations of error.

## FACTS

### I. PRETRIAL

In September 2009, CME and Dunne were in a romantic relationship and CME moved in with Dunne, his parents and his nieces. In October 2010, they broke up and CME moved back to her parents' home.

Thereafter, CME reported to the police that Dunne had physically and sexually assaulted her numerous times. 2 VRP at 238-39. CME reported four instances of abuse with specificity. (1) On November 21, 2009, during sex, Dunne strangled her until she involuntarily urinated herself; (2) on January 1, 2010, Dunne hit her in the face and arms multiple times and then used both hands to strangle her; (3) in May 2010, Dunne became angry when she refused to have anal intercourse and he strangled her with his forearm until she passed out, awaking in her own urine; and (4) on July 11, 2010, during sex with Dunne, CME suffered a five-inch tear in her vagina requiring emergency surgery.

In November 2010, the State charged Dunne with one count of second degree domestic violence assault with sexual motivation, two counts of second degree domestic violence assault, and one count of third degree domestic violence rape. In January 2011, the State filed its first witness list, which included the surgeon who repaired CME's vaginal injuries, several police officers, CME, and several of CME's friends.

On March 17, five days before trial, the State filed an amended information charging Dunne with two counts of second degree domestic violence assault, two counts of second degree domestic violence assault with sexual motivation, third degree domestic violence rape, and third degree domestic violence assault with sexual motivation. The State also filed a new witness list adding Dr. Marilyn Howell, a domestic violence expert, as a witness. The prosecutor, defense counsel, and a defense investigator had a pretrial conference scheduled with Dr. Howell that day and the State anticipated Dr. Howell to be a material witness.

Dunne filed a motion to continue the trial. Dunne asserted that he was entitled to his own domestic violence expert and that he would have to research and begin looking for an expert to

2

counter Dr. Howell and that it would "take much time" to do so. Clerk's Papers (CP) at 173. Dunne asked for a three to four week continuance. The trial court denied the motion to continue, reasoning that (1) since November 2010, Dunne knew that domestic violence was at issue; (2) Dunne knew in February to early March 2011 that its defense would be based on a "lack of reporting, continuing relationship claim"; (3) a continuance would inconvenience the other witnesses; and (4) a continuance would inconvenience the court's scheduling. 1 Verbatim Report of Proceedings at 94. The court instructed Dunne to immediately inform the court if he located an expert and that the court would accommodate the witness if possible.

## II. TRIAL

On March 21, 2011, trial began. The State called (1) CME, who testified to the substantive facts detailing the assaults and rapes; (2) Dr. William Herzig, the emergency room doctor who repaired her vaginal tear; (3) CME's mother and friends who testified to seeing her injuries and observing her demeanor during her relationship with Dunne; (4) Dr. Jason Kearney, an expert on strangulation; and (5) Dr. Howell, a domestic violence expert.

On direct examination, Dr. Herzig described the extent of CME's injuries and the repair of her vaginal tears. Dr. Herzig testified that CME's injury was significant, that he had seen similar injuries in his professional experience during childbirth, and that CME's injuries appeared unusual "for someone having regular sex." 2 VRP at 218. Dunne's cross-examination of Dr. Herzig provided, in relevant part:

> [Defense Counsel]: . . . Would you agree, to a reasonable medical standard, more likely than not, that her injury is the result of consensual sex?
> Dr. Herzig: Okay. So, I'm—I just want to understand the question. You are asking me if, based on medical knowledge, I think that this injury resulted from consensual sex?

[Defense Counsel]:    On a more likely than not basis.
Dr. Herzig:    And, I would assume by this, we are talking normal sexual relationship between a man and a woman. Nothing involving—you know—
[Defense Counsel]:    Well, Your Honor, may I lay a foundation that we allege occurred?
[Court]: No.
[Defense Counsel]: Okay.
[Court]: I'm going to reverse that ruling. This is not a proper question at all. You're—to get into consent he has to be commenting on the mind frame of the participants. Different question, please.
[Defense Counsel]: Okay. Nothing further, Your Honor.

2 VRP at 225-26.

Dunne's sister, mother, and several friends testified that they never saw any signs of Dunne abusing CME. Dunne also called a strangulation expert named Dr. William Brady. Dr. Brady testified contrary to some of Dr. Kearney's opinions that CME's injuries were consistent with strangulation. Finally, Dunne testified that he had backhanded CME one time after she bit his tongue and made him bleed. He also testified that he caused CME's vaginal tears but that CME had consented to the sexual activity that led to the injury, and he denied all other allegations.

Near the end of the prosecutor's closing argument, while talking about the weakness of Dunne's evidence presented at trial and the strength of the State's evidence, particularly with regard to the testimony about CME's signs and symptoms of strangulation, the prosecutor stated, "And keep in mind that [the] [d]efense really has provided no explanation in this case for the injuries." 4B VRP at 722. Dunne did not object. Defense counsel then began his closing argument mentioning the State's standard of proof as being a "high standard here beyond a reasonable doubt." 4B VRP at 723.

No. 42149-6-II

The State proposed jury instructions and special verdict forms, several of which included the words "victim" and "named victim." CP at 222, 225-26, 236, 239-40, 243-44, 246-47. Dunne did not object and did not propose alternate jury instructions relating to the special verdicts. While the substantive jury instructions adopted by the trial court included CME's name where appropriate, the court's special verdict forms and corresponding instructions included the words "victim" and "named victim" when referring to CME. CP at 300-01, 305, 316-19, 322, 324-27. For example, instruction 24 provided, in part:

> You will also be given a special verdict form for all crimes charged to determine whether the defendant and the *named victim* were family or household members. . . . If you find the defendant not guilty of any of these crimes, you will then use the family or household special verdict form.

CP at 300 (Jury Instruction No. 24) (emphasis added).

As an example of the special verdict forms used, the form for count 1 provided, in part:

> QUESTION: Did the Defendant's conduct during the commission of Assault in the Second Degree as charged in Count 1 manifest deliberate cruelty or intimidation of the *named victim* . . . ?

CP at 316 (emphasis added). Dunne did not object to any of the instructions or special verdict forms.

The jury found Dunne guilty of three counts of second degree assault, third degree rape, and third degree assault plus various aggravating factors.[1] Dunne appeals.[2]

---

[1] The jury also found Dunne not guilty of one count of second degree assault.

[2] About a month after trial, in a motion for new trial, Dunne presented a domestic violence expert to the trial court and argued that the expert should be given an opportunity to do a full psychological workup of CME to rebut Dr. Howell's testimony. The trial court disagreed because it was not convinced that the proposed expert had any admissible evidence to offer and

5

## ANALYSIS

### I. DENIAL OF TRIAL CONTINUANCE

First, Dunne argues the trial court violated his right to a fair trial by denying his motion to continue because the State named Dr. Howell as a key witness "at the last minute" and this impaired his ability to consult with his own domestic violence expert. Br. of Appellant at 26. Dunne argues that the denial prejudiced him because he was eventually able to find a domestic violence expert who "had specific criticisms of the conclusions . . . the state's expert drew." Br. of Appellant at 27. Because the reasons given by the trial court in denying Dunne's request for a trial continuance were reasonable, it did not abuse its discretion.

### A. Standard of Review and Rules of Law

We review the trial court's decision to grant or deny a continuance under an abuse of discretion standard. *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004). We will not disturb the trial court's decision unless the appellant makes "a clear showing . . . [that the trial court's] discretion [is] manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Downing*, 151 Wn.2d at 272 (citation omitted) (alterations in original). "In exercising discretion to grant or deny a continuance, trial courts may consider many factors, including surprise, diligence, redundancy, due process, materiality, and maintenance of orderly procedure." *Downing*, 151 Wn.2d at 273 (citing *State v. Eller*, 84 Wn.2d 90, 95, 524 P.2d 242 (1974); RCW 10.46.080; CrR 3.3(f)). The trial court must consider the totality of the circumstances present in the particular case but there are no "mechanical tests" for deciding

---

the idea that he could do a full psychological workup of CME to prepare any evidence was "nonsense." 5 VRP at 803. Dunne does not challenge that determination.

when a denial violates due process, inhibits a defense, or conceivably projects a different result. *Eller*, 84 Wn.2d at 96. Unchallenged findings of fact are verities on appeal. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

## B. Discussion

*State v. Chichester* is helpful to our analysis. 141 Wn. App. 446, 170 P.3d 583 (2007). In *Chichester*, the State moved to continue Chichester's trial because the State did not have a prosecutor prepared to try the case on the scheduled trial day. 141 Wn. App. at 450. The trial court denied the State's motion and Division One of this court affirmed, reasoning that the trial court properly considered several of the *Downing* factors: (1) the necessity for orderly procedure in setting trials, (2) that the State did not use due diligence in solving its self-created problems, and (3) the expense and inconvenience that granting the motion would create. *Chichester*, 141 Wn. App. at 454-55 (citing *Downing*, 151 Wn.2d at 273).

The trial court here properly denied Dunne's trial continuance motion for several reasons. First, the court was concerned about maintaining the court's orderly procedures and due process. *Downing*, 151 Wn.2d at 273. Here, granting the continuance would have disrupted the court's schedule and the difficult arrangements it had made. Second, it was reasonable for the trial court to conclude (1) that defense counsel had essentially not used due diligence to find an expert since it developed its theory of the case months earlier, and (2) that defense could not find such an expert in three to four weeks. The court also properly considered the inconvenience to the other witnesses who were ready to proceed.

The trial court properly found that Dunne was not surprised by the State's naming of a domestic violence expert. Dunne knew in November 2010 that domestic violence was part of the

State's case and the State notified Dunne on March 8 that it intended to call a domestic violence expert. Further, the trial court told defense counsel that it should continue to look for an expert and that it would accommodate the situation during trial if defense counsel did so. However, when Dunne eventually found an expert, the trial court determined the expert's testimony was inadmissible. Dunne does not challenge that finding of fact and it is now a verity. *Hill*, 123 Wn.2d at 644.

Dunne relies on *State v. Dunivin* to argue that the trial court erred by denying his motion to continue. 65 Wn. App. 728, 829 P.2d 799, *review denied*, 120 Wn.2d 1016 (1992). But *Dunivin* is factually and procedurally distinguishable and therefore not persuasive. 65 Wn. App. at 729-31. In *Dunivin*, the defense moved for a mistrial mid-trial arguing that the State failed to disclose certain evidence prior to trial. 65 Wn. App. at 731. At the close of trial, the trial court granted Dunivin's motion for new trial because the State violated its discovery obligations. *Dunivin*, 65 Wn. App. at 731.

Here, the trial court did not find that the State violated its discovery obligations. Instead the court found that Dunne should have searched for a domestic violence expert earlier because he knew by November 2010 that the charges involved domestic violence allegations. And, unlike in *Dunivin*, the court gave Dunne the opportunity to look for an expert and to immediately bring that fact to the court's attention. However, Dunne did not renew his motion for a continuance during trial or update the court on his search. And when Dunne found an expert about a month posttrial, the court found the expert's proposed testimony was inadmissible. Since Dunne does not challenge that finding, it is a verity on appeal. *Hill*, 123 Wn.2d at 644.

The trial court stated reasonable grounds for its denial of Dunne's motion. Thus, Dunne has not made a clear showing that the trial court's discretion was "manifestly unreasonable, or exercised on untenable grounds or for untenable reasons." *Downing*, 151 Wn.2d at 272. We hold that the trial court did not abuse its discretion.

## II. CROSS-EXAMINATION OF EXPERT WITNESS

Next, Dunne argues that the trial court denied him the right to confront Dr. Herzig when it did not allow Dunne to ask him if CME's injury could have been caused by consensual sex. Dunne's argument fails because the trial court properly exercised its discretion in refusing to allow irrelevant and speculative testimony.

### A. Standard of Review and Rules of Law

The right to confront and cross-examine adverse witnesses is guaranteed by both the federal and state constitutions. *State v. Darden*, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002) (citing U.S. CONST. amend. 6; CONST. art. I, § 22). The primary and most important component of the confrontation clause is the right to conduct a meaningful cross-examination of adverse witnesses. *Darden*, 145 Wn.2d at 620. Confrontation's "purpose is to test the perception, memory, and credibility of witnesses" and it therefore helps assure the accuracy of the fact-finding process. *Darden*, 145 Wn.2d at 620. When the right to confront is denied, "the ultimate integrity of this fact-finding process is called into question. As such, the right to confront must be zealously guarded." *Darden*, 145 Wn.2d at 620 (citations omitted).

But, a party's right to cross-examine adverse witnesses is not absolute. *Darden*, 145 Wn.2d at 620. We apply basic rules of evidence to determine if the trial court violated Dunne's

confrontation rights when it denied him the opportunity to cross-examine Dr. Herzig about whether CME's injuries resulted from consensual sex. *Darden*, 145 Wn.2d at 624.

A trial court's ruling on evidence admissibility is reviewed for abuse of discretion. *Darden*, 145 Wn.2d at 619 (citing *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995); *State v. Luvene*, 127 Wn.2d 690, 706-07, 903 P.2d 960 (1995)). Abuse exists when the trial court's exercise of discretion is "'manifestly unreasonable or based upon untenable grounds or reasons.'" *Darden*, 145 Wn.2d at 619 (quoting *Powell*, 126 Wn.2d at 258). Similarly, a trial court's limitation of scope of cross-examination will not be disturbed unless it is the result of manifest abuse of discretion. *Darden*, 145 Wn.2d at 619.

## B. Discussion

Although Dunne raises the confrontation clause, in effect we are asked to review the trial court's ruling on the admissibility of Dr. Herzig's answer to defense counsel's question. *Darden*, 145 Wn.2d at 619. Dunne relies solely on *Darden* to argue that Dr. Herzig's answer to the question was relevant. But *Darden* did not address speculative testimony such as that involved here.

In *Darden*, the defense asked the police officer in cross-examination for his precise surveillance location during drug deals. *Darden*, 145 Wn.2d at 617-18. The State argued that the surveillance location was secret and not relevant. *Darden*, 145 Wn.2d at 618. The trial court agreed. *Darden*, 145 Wn.2d at 618. On appeal, the Supreme Court examined the relevance of the officer's exact location under the evidence rules and the prejudice resulting to the defendant from the lack of that testimony. The court held that the information was both relevant and its

omission was prejudicial, remanding for a new trial. *Darden*, 145 Wn.2d at 628. Darden does not lend support to Dunne's argument that the trial court erred here.

ER 401 states that relevant evidence is evidence "having any tendency to make the existence of any fact . . . more probable or less probable." Here, the trial court found that Dr. Herzig's testimony did not fit into this broad definition of relevance because Dr. Herzig was not present at the time of CME's injuries and could not testify about CME's state of mind. Dunne's question to Dr. Herzig was "to a reasonable medical standard, more likely than not, that [CME's] injury is the result of consensual sex?" 2 VRP at 225. The trial court denied the question, reasoning "[y]ou're—to get into consent he has to be commenting on the mind frame of the participants." 2 VRP at 226. The trial court's ruling was correct because Dr. Herzig had no way of knowing whether CME and Dunne were engaged in consensual sex at the time of the injury. Any answer would have been based on speculation and therefore not relevant.

The court attempted to assist defense counsel in properly formulating the question but Dunne abandoned the question and any further questioning of Dr. Herzig. The State is correct that the trial court properly exercised its discretion in limiting Dunne's cross-examination and did not violate Dunne's right to confrontation because Dr. Herzig's answer to the question asked would have been pure speculation. Further, because the jury already heard that CME told Dr. Herzig the injury occurred during consensual sex, Dunne cannot show any prejudice. Thus, Dunne's arguments are unpersuasive. We hold that Dunne fails to show that the trial court manifestly abused its discretion. *Darden*, 145 Wn.2d at 619.

### III. PROSECUTORIAL MISCONDUCT

Next, Dunne argues that the prosecutor engaged in misconduct during closing argument by shifting the burden of proof to the defendant to explain how CME sustained her injuries. We disagree because Dunne fails to show the prosecutor committed misconduct. Thus he has failed to show misconduct so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. Accordingly Dunne fails to preserve this issue for appellate review.

#### A. Standard of Review and Rules of Law

To establish prosecutorial misconduct, a defendant must show both improper conduct and resulting prejudice. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). A defendant fails to preserve a prosecutorial misconduct claim for appeal when she does not object at trial to alleged misconduct, unless the misconduct is so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. *Emery*, 174 Wn.2d at 760-61. We review a prosecutor's comments during closing argument in context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997), *cert. denied*, 523 U.S. 1007 (1998).

A prosecutor has wide latitude to argue reasonable inferences from the evidence. *State v. Thorgerson*, 172 Wn.2d 438, 453, 258 P.3d 43 (2011). But it is improper for the prosecutor to argue that the burden of proof rests with the defendant. *Thorgerson*, 172 Wn.2d at 453. A prosecutor generally cannot comment on the defendant's failure to present evidence because the defendant has no duty to present evidence. *Thorgerson*, 172 Wn.2d at 453. But a prosecutor is entitled to comment upon quality and quantity of evidence if the defense presents any. *State v. Gregory*, 158 Wn.2d 759, 860, 147 P.3d 1201 (2006). "An argument about the amount or

quality of evidence presented by the defense does not necessarily suggest that the burden of proof rests with the defense." *Gregory*, 158 Wn.2d at 860.

B. Discussion

Dunne specifically argues the prosecutor's statement prejudiced him by directly inviting the jury to find him guilty because he failed to present evidence rebutting CME's injuries. Although *State v. Cleveland*,[3] relied on by Dunne is unpersuasive, Dunne's case is similar to *State v. Contreras*, 57 Wn. App. 471, 788 P.2d 1114, *review denied*, 115 Wn.2d 1014 (1990). At Contreras's trial for second degree assault with a deadly weapon, Contreras presented an alibi defense on direct examination, identified an uncalled alibi witness as having been his companion all evening, acknowledged she had been present at a prior trial at his request, and called other witnesses who could only partially corroborate his alibi defense. *Contreras*, 57 Wn. App. at 474. During closing argument, the prosecutor mentioned the alibi witness's absence, saying "'And where is she?' . . . 'You have the obvious witness that you would expect to be called here, and it is not just like she is not around. Something fishy is going on here.'" *Contreras*, 57 Wn. App. at 476.

Division One of this court held there was no misconduct, explaining that when a defendant attempts to establish his theory of a case, the prosecutor is "entitled to attack the

---

[3] 58 Wn. App. 634, 794 P.2d 546, *review denied*, 115 Wn.2d 1029 (1990), *cert. denied*, 499 U.S. 948 (1991). *Cleveland* is distinguishable. In *Cleveland*, the prosecutor commented on the skill of the defense counsel in rebuttal closing argument stating, "[Y]ou can bet your bottom dollar that [defense counsel] would not have overlooked any opportunity to present admissible, helpful evidence to you." 58 Wn. App. at 647. The *Cleveland* court held that the argument was improper because the inference was that Cleveland and his defense counsel had a duty to present favorable evidence if it existed. But, in that case Cleveland did not present any evidence at all, so the prosecutor's comment was much more directed at Cleveland and his attorney's failure to do so.

adequacy of the proof, pointing out weaknesses and inconsistencies, including the lack of testimony which would be integral to the defendant's theory." *Contreras*, 57 Wn. App. at 476. Similarly, here, when viewed in context, the prosecutor's challenged statement simply pointed out the weaknesses and inconsistencies of Dunne's theory of the case.

Dunne challenges the statement, "And keep in mind that [the] [d]efense really has provided no explanation in this case for those injuries." 4B VRP at 722. Shortly before the prosecutor's challenged statement, the prosecutor also said, "Defense's entire theory rests on the fact that this is just a scorned woman who is fabricating all of these different things simply to get back at the man she loved for dumping her." 4B VRP at 720. Thus, the prosecutor' challenged statement came during the portion of the closing argument when the prosecutor was talking about the strength of the State's evidence and CME's and her friends' testimony about her signs and symptoms of strangulation. Dunne admitted that he had backhanded CME one time, her tripping on the bed one night, and his admission that he had caused CME's vaginal tears— although he argued it was during consensual sex.

So, although Dunne tried to explain away several of CME's injuries, he did not mention the neck marks and other signs and symptoms of strangulation. Meanwhile, the State presented three witnesses who testified to seeing CME's marks, neck bruises, and broken blood vessels. The State also presented Dr. Kearney who viewed CME's photographs taken by the police and testified that her injuries were consistent with strangulation. Thus, the prosecutor was entitled to attack the adequacy of the proof Dunne presented at trial and highlight the lack of quality and quantity of Dunne's evidence. *Gregory*, 158 Wn.2d at 860; *Contreras*, 57 Wn. App. at 476.

Here, when viewed in the light of all the evidence and the prosecutor's entire closing argument, we hold that the prosecutor's statement was not an improper comment. Accordingly, Dunne cannot show misconduct so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice and Dunne failed to preserve this alleged error for review.

## IV. JURY INSTRUCTIONS AND SPECIAL VERDICT FORMS

Finally, Dunne argues that the trial court improperly commented on the evidence by using the terms "victim" and "named victim" in its special verdict jury instructions and special verdict forms. Br. of Appellant at 37. Dunne assumes without argument that this error is reviewable for the first time on appeal. Because Dunne did not object at trial, thereby affording the trial court an opportunity to correct any alleged error; he has failed to preserve this issue for appellate review. CrR 6.15.

### A. Standard of Review and Rules of Law

Appellate courts will not consider issues raised for the first time on appeal. RAP 2.5(a); *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). But, a claim of error may be raised for the first time on appeal if it is a manifest error affecting a constitutional right. RAP 2.5(a)(3); *Kirkman*, 159 Wn.2d at 926. Pursuant to RAP 2.5(a)(3), to raise an error for the first time on appeal, the error must be "manifest" and truly of constitutional dimension. *Kirkman*, 159 Wn.2d at 926.

> The defendant must identify a constitutional error and show how the alleged error actually affected the defendant's rights at trial. It is this showing of actual prejudice that makes the error "manifest," allowing appellate review.

*Kirkman*, 159 Wn.2d at 926-27.

"Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." CONST. art. IV, § 16. A judge is prohibited from "'conveying to the jury his or her personal attitudes toward the merits of the case' or instructing the jury that 'matters of fact have been established as a matter of law.'" *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006) (quoting *State v. Becker*, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)). The court's statements or actions are comments on the evidence if the jury may reasonably infer the court's attitude towards the merits of the case. *State v. Elmore*, 139 Wn.2d 250, 276, 985 P.2d 289, *cert. denied*, 531 U.S. 837 (1999). We look to the facts and circumstances in each case to determine whether the judge's words or actions amount to an improper comment. *State v. Jacobsen*, 78 Wn.2d 491, 495, 477 P.2d 1 (1970).

B. Discussion

Our first inquiry is whether the trial court erred by commenting on the evidence.[4] *State v. Alger* is instructive. 31 Wn. App. 244, 640 P.2d 44, *review denied*, 97 Wn.2d 1018 (1982). In *Alger*, the trial court read a stipulation to the jury that the defendant had "never been married to the victim" and Alger argued on appeal that the use of "victim" was a judicial comment on the evidence.

---

[4] To support his argument, Dunne mistakenly relies on *State v. Carlin*, 40 Wn. App. 698, 700 P.2d 323 (1985), *overruled by City of Seattle v. Heatley*, 70 Wn. App. 573, 583-86, 854 P.2d 658 (1993), *review denied*, 123 Wn.2d 1011 (1994). First, *Carlin* involved witness testimony not judicial comment. 40 Wn. App. at 702-03. Second, any error was deemed harmless beyond a reasonable doubt. 40 Wn. App. at 705. Third, *Carlin*'s facts are distinguishable from the facts here.

*Alger*, 31 Wn. App. at 249. But, Division One of this court held that it was not a judicial comment because, in the context of a criminal trial, "the trial court's use of the term 'victim' has ordinarily been held not to convey to the jury the court's personal opinion of the case." *Alger*, 31 Wn. App. at 249.[5]

Similarly, in the context of this criminal case, the trial court's jury instructions and special verdict forms did not convey the court's opinion of the evidence or the merits of the case. The term appeared in the trial court's instructions to the jury regarding how to handle the special verdict forms and on several of the special verdict forms themselves. Importantly, each special verdict instruction stated that the jurors were to use the special verdict forms only if they first found the defendant guilty. Consequently, once the jury found Dunne guilty, the jury had already determined that CME was the "named victim" for the purpose of the special verdict forms.

In conclusion, when placed in the context of the entire trial, the judge's instructions conveyed no personal opinion towards the merits of the case to the jury. *Alger*, 31 Wn. App. at 249. We hold that the trial court's special verdict instructions and special verdict forms' references to "victim" and "named victim" were not judicial comments on the evidence. Since Dunne cannot show an improper judicial comment, Dunne cannot show error, and certainly cannot show manifest constitutional error. Accordingly Dunne cannot raise this issue for the first time on appeal.

---

[5] *Alger* relies on *State v. Painter*, 27 Wn. App. 708, 714, 620 P.2d 1001 (1980), *review denied*, 95 Wn.2d 1008 (1981), and *Lister v. State*, 226 So. 2d 238, 239, *cert. denied*, 234 So. 2d 123 (Fla. 1969).

No. 42149-6-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, A.C.J.

We concur:

Quinn-Brintnall, J.

Bjorgen, J.