FILED
COURT OF APPEALS
DIVISION II

2014 MAY -6 AM 8: 29

STATE OF WASHINGTON

DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>     Respondent/<br>     Cross-Appellant.<br><br>v.<br><br>CHAD ERNEST CHRISTENSEN,<br><br>     Appellant/<br>     Cross-Respondent. | No. 43745-7-II<br><br><br><br>UNPUBLISHED OPINION |

LEE, J. — Chad Ernest Christensen appeals his conviction of first degree child molestation, arguing that he received ineffective assistance of counsel because his attorney failed to object when the State elicited testimony concerning the victim's truthfulness and the fact of his arrest and incarceration. In a pro se statement of additional grounds (SAG), Christensen argues that his trial attorney also was ineffective in failing to investigate the victim's use of a sleeping aid and its possible side effects. The State cross appeals, arguing that the trial court erred in concluding that one of Christensen's prior convictions "washed" and in failing to include it in his offender score. Because the State did not elicit inadmissible testimony and because any evidence concerning the victim's use of a sleeping aid was irrelevant, Christensen did not receive ineffective assistance of counsel. And, because the trial court properly concluded that the State failed to prove that Christensen committed his current offense before the washout period for the

prior conviction expired, it properly calculated his offender score. We affirm the conviction and sentence.

FACTS

During the summer and fall of 2010, Christensen began a romantic relationship with E.C., whom he had known since childhood. At the time, Christensen was living with his infant daughter in Chehalis, and E.C. and her four children were living in Vancouver. E.C. has two daughters: I.B., who was then 8 years old, and A.B., who is two years older than I.B. Christensen and E.C. married on December 11, 2010, and lived with their children in Onalaska.

Sometime before the wedding, E.C. and her children stayed with Christensen in his Chehalis apartment. One evening, I.B. and Christensen were in the living room on the couch, watching television, when Christensen took I.B.'s hand by the wrist and placed it in his pants so that she touched his penis. She took her hand out and eventually went to sleep.

The next morning, A.B. walked into the bathroom and saw I.B. washing her hands. When A.B. asked what she was doing, I.B. told her about the touching and said that she was washing her hands because she "could still feel it." Report of Proceedings (RP) (June 14, 2012) at 178. A.B. told I.B. that she needed to tell their mother, E.C., what had happened. I.B. told her mother that Christensen had taken her hand and placed it in his pants and on his penis. Christensen had left the apartment by that time, but when E.C. confronted him later with I.B.'s claims, he denied the allegations. E.C. believed Christensen.

In September 2011, Christensen and E.C. argued over an unrelated issue, and Christensen left the home. Christensen told I.B. a few days later that it was her fault that he could not return.

When I.B. repeated this to her mother, E.C. decided to report the touching incident to Child Protective Services (CPS). E.C. and Christensen eventually filed for divorce.

I.B. was reluctant to speak with the CPS investigator, Keith Sand, at school, so Sand arranged for her to speak with investigator Ronnei Jensen at the CPS office. This interview was audiotaped while Sand and Lewis County Sheriff's Detective Tom Callas watched and listened through a two-way mirror. When Jensen asked I.B. what she had told her mother, I.B. asked for a piece of paper so that she could write it down. I.B. wrote that Christensen "went in bed with me and I was pretending to fall asleep and he grabbed my hand and took out his weiner [sic] and made my hand touch it and put it down his pants." Ex. 2. She then talked about the details of the incident. I.B. gave a consistent description to her counselor, Sandra Ames. Chehalis Police Detective Rick Silva subsequently interviewed Christensen, who admitted being on the couch with I.B., but denied that anything inappropriate had occurred.

The State charged Christensen by amended information with one count of first degree child molestation and alleged that he used his position of trust to facilitate the commission of the offense. The charging document stated that the molestation took place between September 12, 2009, and October 12, 2011.

Following a pretrial hearing, the trial court concluded that Christensen's statements to Detective Silva were admissible, that I.B. was competent to testify, and that I.B.'s statements to her sister, her mother, the two CPS investigators and her mental health counselor were admissible as long as she testified.

I.B. was the State's first witness, and her testimony about the incident was consistent with what she told her sister, mother, Jensen, and Ames. During her direct testimony, the following exchange occurred:

Q. When you talked to your sister and mom that morning, did you tell them the truth about what happened?
A. Yes.

. . .

Q. The things you told your counselor Sandra, were those things you told the truth?
A. Yes.
Q. Were these things you told Ronnei the truth?
A. Yes.

RP (June 14, 2012) at 180-81, 187. I.B. denied telling anyone that she had lied about Christensen, and during cross-examination, she denied telling her aunt and sister that her allegations were not true. During I.B.'s redirect examination, this exchange occurred:

Q. Has anyone ever told you what to say about [Christensen]?
A. No. They just say tell the truth.
Q. Who told you that?
A. My grandma, my mom and so—

. . . .

Q. So you understand when the judge had you raise your right hand, you were promising to tell the truth?
A. Yes.
Q. You understand that?
A. Yes.
Q. Is everything you told us here today the truth?
A. Yes.

RP (June 14, 2012) at 211, 213.

The CPS investigators also testified for the State, as did A.B., E.C., Ames, and Detective Silva. After questioning Silva about his interview with Christensen, the prosecutor asked about Christensen's arrest:

4

Q. Direct your attention to December 7, 2011: Did you make an arrest of the defendant on that day?
A. Yes, I did. He was taken into custody and booked into the Lewis County jail.

RP (June 15, 2012) at 353-54. Silva's interview with Christensen was published for the jury, as was Jensen's interview with I.B.

E.C.'s sister testified for the defense that I.B., A.B., and E.C. had told her that I.B.'s allegations were false. Detective Callas testified that E.C. did not initially believe I.B.'s allegations, and Christensen's sister testified that E.C. had told her that Christensen was "going to pay" for leaving her and her children. RP (June 15, 2012) at 363. Christensen testified that E.C. confronted him about I.B.'s allegations a few weeks before the couple married. He denied any inappropriate touching.

The trial court instructed the jury that to find Christensen guilty, it had to find that he committed the offense between September 12, 2009, and October 12, 2011. The jury found Christensen guilty and also found that he had used his position of trust or confidence to facilitate the commission of the offense.

At sentencing, the State noted that there was an issue concerning Christensen's offender score. Christensen had four prior offenses. RP 505. The parties agreed that the first three convictions counted for a total of 6 points, but they disagreed about adding 1 point for the fourth conviction of second degree unlawful possession of a firearm. Christensen was released from confinement for this class C felony on July 20, 2006. The applicable washout period expired on July 20, 2011, which fell within the charging period for Christensen's current offense included in the information and the "to convict" instruction. The State argued that the evidence showed that the molestation occurred before Christensen and E.C. married in 2010 and before the firearm

conviction washed, but Christensen argued that because the jury did not find that he committed his current offense on a specific date before the washout period expired, his firearm conviction should not count. The trial court agreed that the firearm conviction washed. Based on an offender score of 6, the trial court imposed an underlying sentence of 114 months, plus 18 months for the aggravator, for a total sentence of 132 months to life.[1]

Christensen appeals his conviction, arguing that he received ineffective assistance of counsel. The State cross appeals Christensen's sentence, arguing that the trial court erred in calculating Christensen's offender score.

## ANALYSIS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Christensen contends that he received ineffective assistance of counsel because his attorney failed to object when the State elicited testimony from I.B. about her truthfulness as well as testimony from Detective Silva about Christensen's arrest and incarceration. Christensen adds in his SAG that his attorney was ineffective because he failed to investigate I.B.'s use of melatonin and offer expert testimony about its side effects.

Whether a defendant received ineffective assistance of counsel is a mixed question of law and fact that we review de novo. *State v. McLean*, 178 Wn. App. 236, 246, 313 P.3d 1181, 1186 (2013), *review denied*, 179 Wn.2d 1026 (2014). To prove ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient

---

[1] With an offender score of 6, the standard range was 98-130 months; with a score of 7, the range would be 108-144 months. RCW 9.94A.510.

performance was prejudicial to defendant's case. *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996). A failure to satisfy either prong is fatal to a claim of ineffective assistance of counsel. *McLean*, 178 Wn. App. at 246.

When determining whether counsel's performance was deficient, we begin with a strong presumption of counsel's effectiveness. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Counsel's performance is deficient if it falls below an objective standard of reasonableness and cannot be characterized as legitimate trial strategy or tactics. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). Prejudice occurs when there is a reasonable probability that the trial's result would have differed had the deficient performance not occurred. *Hendrickson*, 129 Wn.2d at 78.

We now apply these standards to Christensen's three claims of ineffective assistance of counsel.

1. I.B.'s Truthfulness

Christensen argues that his attorney should have objected when the State elicited I.B.'s testimony that she was telling the truth. He contends that because I.B.'s credibility was the main issue at trial, defense counsel was ineffective in failing to object to the prejudicial and inadmissible testimony that the State introduced to bolster her credibility.

To support his claim of error, Christensen cites to cases holding that it is improper for a prosecutor to ask a witness to testify about the credibility of another witness. *See, e.g, State v. Jerrels*, 83 Wn. App. 503, 507, 925 P.2d 209 (1996) (misconduct occurs when prosecutor's cross examination seeks to compel a witness's opinion as to whether another witness is telling the truth); *State v. Suarez-Bravo*, 72 Wn. App. 359, 366, 864 P.2d 426 (1994) (misconduct

occurred when prosecutor repeatedly attempted to get defendant to call the police witnesses liars). Weighing the credibility of the witnesses is the jury's province; witnesses may not express their opinions on whether another witness is telling the truth. *State v. Casteneda-Perez*, 61 Wn. App. 354, 360, 810 P.2d 74, *review denied*, 118 Wn.2d 1007 (1991).

In asserting that a witness may not testify about her own credibility, Christensen cites *State v. Reed*, 102 Wn.2d 140, 684 P.2d 699 (1984). This case does not support Christensen's assertion. Instead, it stands for the proposition that an attorney may not assert his personal belief in the credibility of the witnesses or the accused's guilt. *Reed*, 102 Wn.2d at 145-46.

Christensen cites no authority that directly supports his claim of error, perhaps because it is unassailable that a witness may be asked and may testify as to whether her testimony is truthful. Indeed, such a statement is made every time a witness takes the stand and declares under oath or affirmation that she will testify truthfully, as required under ER 603.

Christensen is correct that this case turned on the victim's credibility. Consequently, both parties questioned I.B. about her veracity. In addition, defense counsel called witnesses who testified that I.B. had recanted her allegations, that E.C. did not initially believe her daughter's accusation, and that E.C. wanted Christensen to "pay" for leaving her. Instead of calling attention to I.B.'s assertions of truthfulness by objecting, defense counsel sought to undermine those assertions with substantive evidence. Thus, defense counsel's failure to object to the State's questioning of I.B. can be characterized as a legitimate trial strategy that defeats a claim of deficient performance.

Christensen has failed to cite any authority that establishes I.B.'s testimony about her truthfulness was inadmissible. Counsel's failure to object to evidence cannot prejudice the

defendant unless the trial court would have ruled the evidence inadmissible. *McLean*, 178 Wn. App. at 248. Here, Christensen has failed to show that I.B.'s testimony about her own veracity was inadmissible. Accordingly, Christensen's claim fails.

2. Christensen's Arrest and Incarceration

Christensen next argues that Detective Silva's testimony about arresting him and taking him to jail constituted improper opinion testimony as to Christensen's guilt. Christensen cites to no authority supporting his contention that the fact of arrest is categorically inadmissible.

We recently rejected a similar claim after observing that the defendant had cited no authority stating that the fact of an arrest is categorically inadmissible. *McLean*, 178 Wn. App. at 249. We also distinguished the same two cases on which Christensen relies to support his claim of error. *McLean*, 178 Wn. App. at 249 (citing *Warren v. Hart*, 71 Wn.2d 512, 429 P.2d 873 (1967); *State v. Carlin*, 40 Wn. App. 698, 703, 700 P.2d 323 (1985)).

In *Carlin*, a police officer testified that a police dog followed a "fresh guilt scent" from the scene of a burglary to the defendant. 40 Wn. App. at 703. We observed in *McLean* that stating that a defendant emitted an objectively ascertainable "guilt scent" was not comparable to stating the fact of an arrest. 178 Wn. App. at 249.

In *Warren*, defense counsel argued that the jury should find that a driver was not negligent because police officers decided not to issue a traffic citation at the scene of a car accident. 71 Wn.2d at 517. As we observed in *McLean*, the *Warren* case says nothing about admitting evidence showing the fact of a criminal defendant's arrest. 178 Wn. App. at 249.

The fact that Detective Silva added that he took Christensen to jail following his arrest does not alter our conclusion that *Carlin* and *Warren* do not support a claim of deficient

9

performance. Nor does the timing of this testimony influence our decision. Christensen argues that the question concerning his arrest deliberately came at the culmination of the detective's testimony, but this argument overlooks the fact that the prosecutor recalled the detective for additional questions that had nothing to do with the fact of arrest or incarceration.

Here, as in *McLean*, withholding an objection can be characterized as a legitimate trial tactic that sought to avoid emphasizing the fact of Christensen's arrest and incarceration. Furthermore, having failed to establish that this evidence was inadmissible, Christensen again cannot show prejudice. Christensen's claim of ineffective assistance of counsel fails.

3. Failure to Investigate and Hire Expert

Finally, Christensen argues in his SAG that he received ineffective assistance of counsel when his attorney failed to interview the State's witnesses about the melatonin that I.B. was taking as a sleeping aid at the time of the incident and failed to hire a medical expert to testify about its side effects.

During E.C.'s cross-examination, defense counsel asked about I.B.'s sleeping habits and whether E.C. had found it necessary to give I.B. any type of pill. After the State objected, the trial court excused the jury, and defense counsel explained that he was referring to E.C. giving her daughters melatonin for sleep issues, which might have some bearing on the possibility of dreams or nightmares. Defense counsel had no medical testimony about the side effects of melatonin to offer, but he planned to have Christensen's mother testify that melatonin gives her nightmares. The trial court explained that any evidence that witnesses take melatonin and have nightmares would not be admissible absent expert testimony explaining that melatonin causes nightmares, but it permitted an offer of proof on the issue.

10

Defense counsel then asked E.C. about giving I.B. melatonin. She replied that she occasionally gives her children melatonin without it having any adverse effect on them. E.C. could not remember giving I.B. melatonin the night before I.B. made her allegations against Christensen. Following this offer of proof, the trial court excluded the melatonin evidence as irrelevant because there was no evidence that I.B. took melatonin the night before the alleged incident, no evidence that she was asleep at the time of the incident, and no expert testimony about melatonin's side effects. Our record does not disclose the scope of defense counsel's pretrial investigation into I.B.'s melatonin use. Because our review is limited to the appellate record, we decline to consider the issue of whether counsel was ineffective in failing to interview the State's witnesses about I.B.'s melatonin use. *State v. Crane*, 116 Wn.2d 315, 335, 804 P.2d 10, *cert. denied*, 501 U.S. 1237 (1991). Furthermore, given the lack of evidence that I.B. used melatonin the night before she made her allegations, the failure to introduce expert testimony on the side effects of melatonin was neither deficient nor prejudicial. Accordingly, Christensen's claim fails.

## B. OFFENDER SCORE

The State argues on cross appeal that the trial court erred in concluding that Christensen's prior conviction for unlawful possession of a firearm washed for the purpose of calculating his offender score and standard sentencing range and that resentencing is required. When a direct appeal shows that an incorrect offender score was used to calculate the standard range, resentencing is required even where the trial court imposed an exceptional sentence, unless the record clearly indicates that the sentencing court would have imposed the same sentence anyway.

*State v. Ford*, 137 Wn.2d 472, 485, 973 P.2d 452 (1999); *State v. Parker*, 132 Wn.2d 182, 189, 937 P.2d 575 (1997).

Christensen's prior conviction for second degree unlawful possession of a firearm is a class C felony. RCW 9.41.040(2)(b). Under the Sentencing Reform Act (SRA), this prior conviction "shall not be included in the offender score if, since the last date of release from confinement . . . the offender ha[s] spent five consecutive years in the community without committing any crime that subsequently results in a conviction." RCW 9.94A.525(2)(c). Christensen was released from confinement for the firearm conviction on July 20, 2006. Consequently, the five-year washout period expired on July 20, 2011. Christensen was charged with committing his current offense between September 12, 2009, and October 12, 2011.

The State argued below, as it does on appeal, that the testimony showed that the touching incident occurred before E.C. and Christensen married on December 11, 2010, which was before the five-year washout period expired. Defense counsel responded that the State never sought, and the jury never made, any finding that the offense occurred on a specific date before the washout period expired, and that the firearm conviction had washed. The trial court ruled without explanation that the offense washed.

In addressing the State's argument, we find guidance in *Parker*, 132 Wn.2d 182.[2] In *Parker*, the defendant was charged with committing two different crimes within a five-year

---

[2] Christensen asserts that the State is equitably estopped from raising this argument. We reject this assertion, particularly where the State has clearly preserved its claim of error. *See State v. Yates*, 161 Wn.2d 714, 738, 168 P.3d 359 (2007) (declining to apply equitable estoppel after observing that no Washington case has extended it to criminal prosecutions), *cert. denied*, 554 U.S. 922 (2008). Equitable estoppel requires a statement inconsistent with the claim later

period. 132 Wn.2d at 185. During the fourth year of the charging period, the legislature amended the SRA to significantly increase the standard ranges for the charged crimes. *Parker*, 132 Wn.2d at 185. At trial, evidence was presented that the defendant committed the acts throughout the charging period. *Parker*, 132 Wn.2d at 185. During closing, the prosecutor urged the jury to consider the entire charging period; the jury was not asked to specify whether the defendant committed the acts after the effective date of the penalty increase. *Parker*, 132 Wn.2d at 185. The Supreme Court agreed with the defendant that the trial court erred by using the increased penalties without requiring the State to prove that the crimes occurred after those penalties became effective. *Parker*, 132 Wn.2d at 191. "[W]hen the crime was committed is a factual question which must be put to the jury." *Parker*, 132 Wn.2d at 192, n.14.

Christensen's jury was not asked to specify whether he molested I.B. before the five-year washout period expired. Rather, the "to convict" instruction required the jury to find that he committed the offense within a timeframe that straddled the washout date. During closing, the prosecutor discussed the other elements of the crime and then urged the jury to consider the entire charging period: "that leaves element number 1, that on or about and between September 12, 2009 and October 12, 2011—big time net—basically from when she turned eight up to the time it got reported, so we know we're in that time, the defendant had sexual contact with [I.B.]." RP (June 18, 2012) at 475.

---

asserted, action by the other party in reliance on that statement, and an injury to that other party resulting from allowing the first party to repudiate that statement. *Yates*, 161 Wn.2d at 737-38. The application of equitable estoppel against the government is disfavored. *Yates*, 161 Wn.2d at 738.

13

No. 43745-7-II

In determining a defendant's sentence, the trial court may consider information that has been admitted, acknowledged or proved in a trial. RCW 9.94A.530(2). The State points out that uncontroverted evidence shows that Christensen committed the molestation before the washout period for his prior firearm conviction expired. Given the absence of a jury finding on this issue, however, we see no proof that Christensen committed his current offense before his firearm conviction washed out. Consequently, we affirm the trial court's calculation of the offender score and the resulting standard range.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Bjorgen, P.J.

Maxa, J.

.14